UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GLENNA CAMPBELL, | ) | Case No.: 5:16CV1659 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **REPORT AND RECOMMENDATION** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Glenna Campbell (hereinafter, "Campbell" or "claimant") challenges the final

decision of Defendant Commissioner of Social Security (hereinafter, "Commissioner") denying

her applications for a Period of Disability, Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an

automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons

set forth below, the Magistrate Judge recommends that the Commissioner's final decision be

AFFIRMED.

# I. PROCEDURAL HISTORY

On December 17, 2012, Campbell applied for DIB and SSI. (R. 11, PageID #: 312-313, 314-319.)[1] Campbell stated that she became unable to work on August 13, 2010, because of Lupus. (*Id.* at PageID #: 96, 312, 350.) Campbell's applications were denied initially and upon reconsideration. (*Id.* at PageID #: 175-189, 190-204, 205-206, 221-234, 207-220, 235-236.) Campbell filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at PageID #: 259-260.) The ALJ convened a hearing on December 4, 2014. (*Id.* at PageID #: 112-162.) Campbell was represented by counsel and testified at the hearing. (*Id.* at PageID #: 114.) A vocational expert ("VE") attended the hearing and provided testimony. (*Id.* at PageID #: 114-115, 154-161.) On January 13, 2015, the ALJ concluded Campbell was not disabled. (*Id.* at PageID #: 96, 106.) The Appeals Council denied Campbell's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at PageID #: 68-70.) On June 28, 2016, Campbell filed a complaint challenging the Commissioner's final decision (R. 1). The parties have completed briefing in this case.

In her reply brief, Campbell moves the court to strike defendant's brief from the record, arguing the brief does not comport with the Initial Order entered by the Magistrate Judge who previously presided over the case. (R. 16.) The defendant's brief was filed after this case was transferred to the undersigned and it is in substantial compliance with the undersigned's Standing Order. Striking a party's brief under such circumstances would be an unwarranted sanction, and the court declines to do so. The undersigned will address the merits of the parties' arguments.

---

[1] The ALJ's decision noted that Campbell protectively filed her applications on December 5, 2012, but the date difference does not alter the report and recommendation.

Campbell challenges the Commissioner's denial of benefits and asserts the following assignments of error: (1) the ALJ applied improper standards of law and the decision is not supported by substantial evidence regarding Dr. Wheeler's medical source statements; (2) the ALJ erred in rejecting Campbell's testimony regarding her activities of daily living; (3) the ALJ's hypothetical questions to the VE did not include all of Campbell's limitations.  (R. 13, PageID #: 691, 696-697.)

## II.    PERSONAL BACKGROUND INFORMATION

Campbell was born on November 3, 1962, and was 47 years old on her alleged disability onset date.  (R. 11, PageID #: 312, 105.)  Campbell was considered a "younger person" for Social Security purposes.  *See* 20 C.F.R. § 404.1563(c).  She completed twelfth grade, and is able to communicate in English.  (R. 11, PageID #: 119, 105.)  She has past relevant work as a housekeeping cleaner.  (*Id.* at PageID #: 156, 105.)

## III.    RELEVANT MEDICAL EVIDENCE[2]

### A.  Treatment Records

Disputed issues will be discussed as they arise in Campbell's brief alleging errors by the ALJ.  As noted earlier, Campbell applied for Disability Insurance and SSI benefits on December 17, 2012.  (R. 11, PageID #: 312-313, 314-319.)  Campbell listed her physical or mental conditions that limit her ability to work as: Lupus.  (R. 11, PageID #: 350.)

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the Court to the assignments of error raised.

Campbell's brief refers the court to the following pertinent evidence.  (R. 13, PageID #: 684-686.)  Campbell states she began treating with Dr. Rachel Waldman, a physician board-certified in Internal Medicine and Rheumatology, as early as December 2010.  Dr. Waldman determined that Campbell had positive test results that indicated lupus erythematosus, with photosensitivity.  Dr. Waldman also determined that Campbell most likely had undifferentiated connective tissue disease (UCTD).  (R. 13, PageID #: 684, citing R. 11, PageID #: 399.)  She prescribed Plaquenil to help with arthralgias (joint pain).  (R. 11, PageID #: 399.)

David P. Lang, M.D., a rheumatology specialist, ordered nerve conduction studies and needle electromyogram studies of Campbell's left upper extremity (her left arm).  The resulting December 7, 2012, electrodiagnostic analysis found abnormality in her left arm, suggesting the presence of a cervical motor radiculopathy.  (R. 11, PageID #: 395, 676.)  Testing and clinical exams by Dr. Lang documented further abnormalities and medical impairments, such as left-sided facet joint arthrosis at C-4-C5 (*Id.* at PageID #: 499); mild degenerative disc disease (mild central canal stenosis at C5-C6) (*Id.* at PageID #: 497-498); and, Sjogren's Syndrome, an autoimmune system disorder (positive testing for SSA) (*Id.* at PageID #: 677).

Campbell received treatment from Dr. Lang and Dan Wheeler, M.D., in the period 2012 to 2014.  (R. 13, PageID #: 685-686, citing treatment records.)  Dr. Wheeler, a board-certified internist, was her primary care provider.  (R. 11, PageID #: 672.)


### B.  Medical Opinions Concerning Claimant's Functional Limitations

Yolanda Duncan, M.D., an internist, performed a consultative physical exam on the claimant on March 7, 2013.  (R. 11, PageID #: 454-456, *see also* PageID #: 450-453 (manual muscle testing); 438-449 (pulmonary function studies).  Campbell reported to Dr. Duncan that

she had left leg pain, and that she had been diagnosed with left knee arthritis. She further reported an asthma diagnosis ten years earlier, and that her medical history included lupus and GERD (gastroesophageal reflux disease). Dr. Duncan noted Campbell was positive for shortness of breath and left leg pain. (R. 11, PageID #: 454.) Campbell notes that the pulmonary function testing confirmed moderate obstruction, with no improvement from bronchodilators. (R. 13, PageID #: 686, citing R. 11, PageID #: 441.) The technician indicated that Campbell had shortness of breath and coughing during the pulmonary tests. (R. 11, PageID #: 440.)

The ALJ gave little weight to Dr. Duncan's opinions that Campbell could only walk about a quarter of a block before needing rest, could not sit or stand for more than ten minutes at a time, and could climb no more than a flight of stairs. (R. 11, PageID #: 103, citing PageID #: 455.) The ALJ assigned little weight to this opinion "because it appears based primarily on the claimant's subjective allegations, versus even the signs that Dr. Duncan herself observed in the examination of claimant." (*Id.* at PageID #: 103, citing PageID #: 450-455.) The ALJ determined that the "relatively unremarkable x-rays, EMGs, and nerve conduction studies contained in this record do not support the marked restrictions in sitting and standing" proffered by Dr. Duncan. (*Id.* at PageID #: 103.)

On April 16, 2013, Judith Rosenthal, Ph.D., a state agency psychologist, performed a consultative exam on Campbell. (R. 11, PageID #:458-463.) Dr. Rosenthal diagnosed claimant with generalized anxiety disorder and depressive disorder. She assigned Campbell a symptom GAF of 60, and a functional GAF of 64. (*Id.* at PageID #:461.)

The claimant's primary care physician Dr. Wheeler provided a Medical Source Statement on December 15, 2014. (*Id.* at PageID #: 660-664.) Campbell directs the court's attention to Dr. Wheeler's opinion that she is limited to standing/walking about two hours out of an eight-hour

workday, which would limit her to performing sedentary work only. (R. 13, PageID #: 686, citing R. 11, PageID #: 662.) Dr. Wheeler stated that he had been treating Campbell for over a year. He indicated that Campbell did not fulfill the diagnostic criteria for systemic lupus erythematosus, and that her rheumatologist treats her for Sjogren's Syndrome. She was also diagnosed with chronic pain. (R. 11, PageID #: 660-661.) He adjudged her to have "none or mild" functional limitations in daily living, social functioning, and completing tasks with concentration, persistence or pace. (*Id.* at PageID #: 661.) Dr. Wheeler indicated that, during an 8-hour workday, the claimant could sit for at least six hours, and stand or walk for about two hours. The claimant does not need a job that permits shifting positions at will from sitting, standing or walking. (*Id.* at PageID #: 662.) In summary, Dr. Wheeler reiterated that Campbell "does not have lupus. She is treated for Sjogren's." (*Id.* at PageID #: 664.)

The ALJ gave "little weight" to Dr. Wheeler's Medical Source Statement, singling out his determination that Campbell could sit for six hours, and stand or walk for only two hours, of an eight-hour workday, and that she could lift no more than ten pounds occasionally. (R. 11, PageID #: 104, citing PageID #: 659-664; *see* PageID #: 662-663.) The ALJ asserted that:

> . . . such an opinion appears based primarily on the claimant's subjective
> allegations, compared to signs of little observed deficit in gait or [leg] strength,
> and the lack of any shown significant findings concerning degenerative changes
> in the lumbar spine.

(R. 11, PageID #: 104.) The claimant points to her hearing testimony for support of a number of limitations in her daily activities. (R. 13, PageID #: 688, citing*, inter alia*, PageID # 119 (leg numb, fell down stairs), 125 (hard to stand), 139 (can stand 5-10 minutes.)) Dr. Duncan's records, however, show that she performed manual muscle testing on Campbell in March 2013, which showed normal motor strength and range of motion in all areas. (R. 11, PageID #: 450-453.)

Campbell notes that the case record also contains RFC opinion statements by state agency reviewing physicians, Leon D. Hughes, M.D., and Michael Delphia, M.D. Campbell points out that neither of the reviewing physicians appears to be a rheumatologist, nor was she examined by a state agency physician who specializes in rheumatology. (R. 13, PageID #: 687.) The state agency reviewing physicians opined that Campbell should be able to perform light work. (R. 13, PageID #: 687, citing R. 11, PageID #: 183-184, 214-215.) The ALJ stated that he gave "significant weight" to the agency physicians' opinions, "because they are consistent with the degree of impairment shown on the nerve conductions studies, x-rays, and EMG studies contained in this record." (R. 11, PageID #: 103, citing *e.g.*, PageID #: 550.) The ALJ also said that "these two opinions are consistent with the lack of any signs of acute physical limitations, as shown by negative straight leg raise testing, and a normal gait, to name but two." (R. 11, PageID #: 103, citing *e.g.*, PageID #: 455, 467.)

## IV.     TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert provided testimony. (R. 11, PageID #: 154-161.) The VE determined that Campbell had past relevant work as a housekeeping cleaner, which was performed at the medium level of exertion, although it is typically light level. (*Id.* at PageID #: 156.) The ALJ asked the VE whether an individual fitting the following profile would be able to perform the claimant's past work:

> assume an individual of the claimant's age, education and work experience and
> assume the individual can work light as that term is typically defined, would be
> able to sit and stand at will at the work station so long as she is not off task
> more than two minutes with each position change, occasional ramps and stairs,
> no ladders or scaffolds, occasional stooping, kneeling, crouching and crawling,
> occasional balancing, avoid concentrated exposure to extreme heat and
> extreme humidity, avoid pulmonary irritants, no unprotected heights or moving
> machinery, frequent handling of objects, capable of sustaining concentration

and persistence to perform simple work tasks, can perform in work situations that do not require learning and remembering detailed steps or job tasks, can follow simple verbal instructions, will perform optimally in a more solitary setting where tasks do not require direct collaborative efforts with others for task completion and where the individual is not required to interact with the general public and, lastly, no over the shoulder supervision. Would an individual fitting the profile of hypothetical #1 be able to perform the claimant's past work?

(R. 11, PageID #: 157.) The VE asked to clarify exposure to environmental irritants, and the ALJ responded that the individual would need to avoid all exposure to dust, fumes, and smoke in the workplace. The VE then answered "no," that the claimant would not be able to return to her past work as a cleaner.

The ALJ next asked whether there were jobs that such a person could perform. The VE responded that there would be. The vocational expert went on to provide several representative occupations. First, a "marker," DOT 209.587-034, light duty, unskilled with SVP of 2. The VE testified that there would be an estimated 2,000 positions in the Akron area, 5,000 statewide, and 271,000 such jobs in the national economy. Another job would be an advertising material distributor, DOT 230.687-010, also light and unskilled with SVP of 2. There are an estimated 270 positions in the Akron area, 22,000 statewide, and 44,000 such jobs in the national economy. (R. 11, PageID #: 158.) A third job would be a router, DOT 222.587-038, which is light duty, unskilled, SVP 2. The VE estimated 330 positions in the Akron area, 2,000 statewide, and 52,000 such jobs in the national economy. (*Id.* at PageID #: 158-159.)

The ALJ then modified the hypothetical to an individual who could perform frequent handling of objects with the non-dominant hand, but occasional handling of objects with the dominant hand. The ALJ asked whether such a person could perform work in the economy. The VE responded that he did not believe so. The VE pointed out that the jobs he had identified as examples would require frequent handling by the dominant hand, and many of them required

either a certain amount of writing, or computer entry. He opined that the individual would probably have difficulty performing that with only occasional use of the dominant hand. (*Id.* at PageID #: 159.)

Counsel for the claimant then returned to the first hypothetical, and modified the off-task limitation from two minutes, as stated by the ALJ, to "four to five times throughout the course of an hour [for] ten, 15 minutes at a time sitting and then getting up," so that the person would be off-task somewhere in the range of 15% of the time in that hour. (*Id.* at PageID #: 159-160.) The VE responded that typically jobs can performed if a person is off task up to the 15% of the time, although if it is in excess of that, it would be job prohibitive. (*Id.* at PageID #: 160.)

## V. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his January 13, 2015, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since August 13, 2010, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: anxiety, depression, degenerative disc disease, asthma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional following limitations. The claimant requires an at will sit stand option with no more than two minutes off task with each position change. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant can

occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work near unprotected heights or moving machinery. The claimant can frequently handle objects. She can sustain the concentration and persistence to perform simple work tasks. The claimant can perform in work situations that do not require learning and remembering detailed steps or job tasks. The claimant can follow simple, verbal instructions. The claimant would perform optimally in a more solitary setting, where tasks do not require direct collaborative efforts with others for task completion, and where she is not required to interact with the public. The claimant cannot tolerate any over-the-shoulder supervision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 3, 1962, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 13, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 11, PageID #: 98-99, 101, 105-106.)


## VI.   DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when she establishes

disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A

claimant is considered disabled when she cannot perform "substantial gainful employment by

reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a)

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Comm'r of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

VII.    STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has been

defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Therefore, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

VIII.    ANALYSIS

Campbell raises three primary issues for review by challenging the following: (1) the ALJ's analysis of Campbell's treating physician's opinion, (2) the ALJ's rejection of Campbell's testimony concerning her activities of daily living, and (3) the ALJ's hypothetical questions posed to the VE. (R. 13, PageID #: 691, 696-697.)

### A. Treating Physician Rule

The claimant contends that the ALJ violated the "treating physician rule," by applying improper standards of law, and that the decision is not supported by substantial evidence regarding the medical source statements of Dr. Wheeler. (R. 13, PageID #: 691-695.)

It is well-recognized that an ALJ must generally give more weight to the opinions of a claimant's treating physicians than to non-treating physicians. *Gayheart v. Comm'r*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the treating physician rule, is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship may be appropriately equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Comm'r*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Comm'r*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by a treating physician. *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581

F.3d at 406-407; *Winning v. Comm'r*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p). Even when a treating physician's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Comm'r*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Campbell argues that the ALJ's decision should be vacated because it failed to comply with the treating source rule. (R. 13, PageID #: 691.) She contends that the ALJ gave little weight to her primary care doctor's opinion by erroneously focusing on the lack of evidence supporting deficits in Campbell's gait, leg strength and degenerative changes in the lumbar spine.[3] Campbell argues that such evidence has "absolutely nothing to do with the evaluation of immune system disorders such as Lupus Erythematosis, UCTD and Sjogren's Syndrome." (R. 13, PageID #: 691, *see also* PageID #: 693.) Claimant's contention, however, is misdirected.

The ALJ's discussion of gait, leg strength and degenerative changes in the lumbar spine occurred in the context of Dr. Wheeler's opinion that Campbell could sit for six hours and stand or walk for only two hours of an eight-hour workday, and that she could lift no more than ten pounds occasionally. (R. 11, PageID #: 104.) The ALJ's decision addressed the medical opinion evidence, and stated that he gave little weight to the opinion of the treating physician, Dr. Wheeler, concerning those limitations. (*Id.* at PageID #: 104, citing PageID #: 659-664; *see*

---

[3] Although Campbell contends that the ALJ erred by focusing on the lack of evidence supporting such deficits, Campbell's brief also indicates that Dr. Wheeler's opinion regarding her standing/walking limitations is the most significant finding from Dr. Wheeler. (R. 13, PageID # 686, 691.)

PageID #: 662-663.)  The ALJ discounted those opinions after concluding they were based on the claimant's subjective allegations; and the ALJ identified contrary record evidence that there were "signs of little observed deficit in gait or [leg] strength, and the lack of any shown significant findings concerning degenerative changes in the lumbar spine."  (R. 11, PageID #: 104.)

The ALJ determined the nature and severity of impairment was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the other substantial evidence in the case record.  In making that determination, the ALJ gave good reasons for discounting the opinion (specifically here, concerning sit/stand restrictions) submitted by the treating physician, Dr. Wheeler.  The ALJ's explanation was supported by evidence in the case record, and those reasons are sufficiently clear to demonstrate why the ALJ assigned that weight.

Campbell's argument to the contrary effectively requests that the court attribute medical opinions and conclusions to a treating physician, Dr. Wheeler, that are not present in the record. In her underlying application, Campbell listed "Lupus" as the physical or mental condition that limited her ability to work.  (R. 11, PageID #: 350.)  While the ALJ did not specifically discuss Dr. Wheeler's assessment of the alleged immune system disorders, that is not error, because the ALJ indicated that Dr. Wheeler's opinion stated that Campbell did not fulfill the diagnostic criteria for systemic lupus erythematosus, although he noted her rheumatologist was treating her for a different condition, Sjogren's Syndrome.  (R. 11, PageID #: 660-661; *see also* PageID #: 662 (Dr. Wheeler indicated Campbell "does not have lupus;" treated for Sjogren's).)

Campbell's argument that the ALJ improperly failed to give Dr. Wheeler's opinion controlling weight does not directly address Dr. Wheeler's assessment that she does not Lupus.

15

*See generally* R. 13, PageID #: 691-695.  Rather, she points to the diagnoses of Dr. Waldman and Dr. Lang.  (R. 13, PageID #: 693.)  As set forth earlier, Dr. Waldman's records identify test results that might indicate lupus erythematosus and then determined that Campbell most likely had UCTD.  (R. 11, PageID #: 399.)  Dr. Lang diagnosed Sjogren's Syndrome.  (R. 11, PageID #: 677).

Campbell's position is unclear and seems to imply either that Dr. Wheeler improperly diagnosed her immune system disorders or that the ALJ's decision failed to assess Dr. Wheeler's underlying medical records (and unspecified conclusions) that included reference to blood tests ordered by other doctors.  *See* R. 13, PageID #: 693-694.  Campbell contends:

> Dr. Wheeler was clearly aware of the fact that Ms. Campbell has one or more severe immune system disorders as he listed in his chart notes all of the blood tests that were done by rheumatologists Dr. Waldman and Dr. Lang.  The blood tests are the "medically acceptable clinical and laboratory techniques" for diagnosing and evaluating immune system disorders such as Lupus Erythematosis, UCTD and Sjogren's Syndrome.  These tests support the diagnoses rejected by the ALJ when he failed to include any of them as "severe impairments" at Step Two of the sequential evaluation process.

(R. 13, PageID #: 694.)  Campbell's argument faults the ALJ for not interpreting Dr. Wheeler's opinion to include unstated conclusions based upon blood tests found in Dr. Wheeler's chart notes and, by extension, not concluding that the test references support an unstated conclusion that Dr. Wheeler determined Campbell had immune system disorders that constituted severe impairments.  Plaintiff's brief, however, does not to cite to any pertinent medical records in which Dr. Wheeler expressed such an opinion.

Campbell's discussion here is, ostensibly, in support of her assignment of error that the ALJ must give deference to the opinion of the claimant's treating physician, Dr. Wheeler, and that the ALJ did not properly analyze Dr. Wheeler's opinion.  (R. 13, PageID #: 693.)  However, Campbell fails to point to record evidence specifically identifying Dr. Wheeler's opinion of her

immune system disorder(s) that she claims did not receive proper deference. *See generally* R. 13, PageID #: 691-695; R. 16, PageID #: 737. It is not the proper role of ALJ's to "play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3D 966, 970 (7ᵗʰ Cir. 1996); *Bond v. Colvin*, No. 1:13cv101, 2014 WL 470843, at *6 (S.D. Ohio Feb. 6, 2014), *adopted by* 2014 WL 897154 (S.D. Ohio Mar. 6, 2014); *Woodruff v. Astrue*, No. 1:12cv1752, 2013 WL 821336, at *11 (N.D. Ohio Mar. 5, 2013). The ALJ is limited, in this regard, to weighing the physician's opinion, and cannot properly evaluate the medical evidence in the physician's notes to arrive at an independent medical diagnosis that the physician did not reach. *See generally* R. 11, Page ID#: 664.

The claimant also argues that the ALJ could not give little weight to the opinion of Dr. Wheeler, and then give greater weight to the opinions of the state agency reviewing physicians. (R. 13, PageID #: 694.) A treating physician's opinion is given controlling weight provided it is "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406. Treating physicians' opinions are only given deference when they are supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3 (citing *Jones*, 336 F.3d at 477). The ALJ is not bound by a treating physician's opinions, and may reject the treating physician's findings where good reasons to do so are found in the record. *Hare v. Comm'r*, No. 01-4228, 2002 WL 1354699, at *2 (6th Cir. June 19, 2002).

State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e); 416.913a(b)(1); 416.927(e). Although the ALJ generally accords more weight to an examining source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Comm'r*, 594 F.3d 504, 514-515 (6th

Cir. 2010); *Smith*, 482 F.3d at 875. Campbell contends that the state agency physicians, Drs. Hughes and Delphia, did not consider the complete case record and, as such, their opinions should not receive the weight the ALJ accorded to them. (R. 13, PageID # 694-95.) The argument, however, is conclusory. In addition, the court finds no basis for this contention. *See, e.g.*, R. 11, PageID #: 215 (Dr. Delphia's summary of medical evidence). Campbell's assertion that the ALJ may not assign greater weight to the opinions of the state agency reviewing physicians is incorrect. Further, the ALJ did not simply rely upon the state agency physicians' opinions, but rather, considered the record evidence as a whole. When assessing the opinions of state agency Drs. Hughes and Delphia, the ALJ stated "I give significant weight to these two opinions because they are consistent with the degree of impairment shown on the nerve conductions studies, x-rays, and EMG studies contained in the record (*see*, *e.g.* [Ex.] 10F8). Moreover, these two opinions are consistent with the lack of any signs of acute physical limitations, as shown by negative straight leg raise testing, and a normal gait, to name but two. ([Exs.] 5F6, 8F4)." (R. 11, PageID # 103) (internal citations in original).

Following Campbell's argument concerning the weight given to Dr. Wheeler's opinion, her brief includes a paragraph concerning Dr. Duncan. Dr. Duncan is a consultative examining physician who found claimant was limited to sedentary work. Campbell contends that the ALJ "failed to give proper reasons" for assigning Dr. Duncan's opinion little weight. (R. 13, PageID #: 695, citing PageID #: 455.)

The court, however, finds that substantial evidence supports the ALJ's assessment of Dr. Duncan's opinion. The ALJ stated that he assigned little weight to Dr. Duncan's opinion because it was based primarily on claimant's subjective allegations. In addition, the ALJ determined that those subject allegations were not supported by test results or Dr. Duncan's own

recorded observations in her examination of Campbell.  (R. 11, PageID #: 103, citing PageID #: 450-455.)  Further, the ALJ concluded, "[t]he relatively unremarkable x-rays, EMGs, and nerve conduction studies contained in this record do not support the marked restrictions in sitting and standing, which Dr. Duncan proffered."  (R. 11, PageID #: 103.)

As discussed earlier, the court finds that the ALJ gave good reasons for discounting Dr. Wheeler's sit/stand restrictions, which good reasons were supported by evidence in the case record, and those reasons are sufficiently clear to demonstrate why the ALJ assigned that weight. The court finds that the decision of the Commissioner in this respect is supported by substantial evidence.

### B.  Credibility Determination

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference.  *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997); *Gonzalez v. Comm'r*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  Campbell contends that the ALJ improperly rejected Campbell's hearing testimony regarding her activities of daily living. (R. 13, PageID #: 696.). She further asserts that the ALJ mischaracterized her claim as one based on degenerative disc disease.  Campbell argues that "this is a claim where her primary disorders are immune system disorders where there is no degeneration of the lumbar spine."  (R. 13, PageID #: 696.)  She contends that testimony about her limits in her daily activities is supported by the existence and severity of her immune system disorders.  (*Id.*)

On her application for DIB and SSI, Campbell listed her physical or mental conditions that limit her ability to work as: "Lupus."  (R. 11, PageID #: 350.)  At the hearing, she testified that her physical limitation was that she was "in a lot of pain every day."  (*Id.* at PageID #: 124-

126, 129, 146.)  Campbell said that it was hard to sit and hard to stand.  (*Id.* at PageID #: 125.)

She first noticed pain in her neck, but now experiences the worst pain on her left side.  (*Id.* at

PageID #: 126, 145.)  She testified that she believed the source of her pain was lupus.  (*Id.* at

PageID #: 127, 131.)  Campbell also referred to a thyroid disorder, fibromyalgia, carpal tunnel

syndrome, and issues with anxiety.  (*Id.* at PageID #: 127, 131, 132-133, 133-135.)

The ALJ's decision reflects that the claimant has severe impairments of anxiety,

depression, degenerative disc disease, and asthma.  (R. 11, PageID #: 98.)  She has non-severe

impairments of carpal tunnel syndrome, "mild in nature," and Sjogren's disease, which is not

currently active.  (*Id.* at PageID #: 98-99.)

The ALJ is not required to accept the claimant's subjective complaints, and may properly

consider the claimant's credibility.  *Jones*, 336 F.3d at 476 (citing *Walters*, 127 F.3d at 531).

The ALJ concluded that the claimant's statements concerning the intensity, persistence and

limiting effects of her physical impairments were not entirely credible.  (R. 11, PageID #: 101.)

Addressing the claimant's alleged neck and lower back pain, the ALJ found that the evidence of

record did not strongly support her allegations of acute symptoms, and he discussed the evidence

which led him to that conclusion.  The ALJ stated that, overall, her allegations of pain were not

very consistent, and not particularly credible.  "As one example, the claimant initially stated that

the severity of her pain varied from day to day, but later stated that her pain is of a constant

severity."  (*Id.* at PageID #: 102.)

The ALJ also noted that claimant ascribed the majority of her pain to lupus and

fibromyalgia, impairments that the ALJ found the record does not support.  (*Id.* at PageID #:

102.)  Dr. Wheeler, Campbell's treating physician, expressly stated that Campbell does not have

lupus, which the ALJ stated "detracts severely from [her] credibility given how much she focused on Lupus related concerns, in her hearing testimony." (*Id.* at PageID #: 102-103.)

Campbell's brief cites an excerpt from *Gayheart* to argue that there is no evidence in the record establishing that she can perform work activities "on a sustained basis." (R. 13, PageID #: 697.) The *Gayheart* citation, however, addressed how functional limitations of mental impairments are to be assessed. *Gayheart*, 710 F.3d at 377 (citing 20 C.F.R. § 404.1520a(c)(2) (Evaluation of mental impairments). What is at issue in this case is Campbell's alleged physical impairments; and the ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Walters*, 127 F.3d at 531. The ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record." *Rogers v. Comm'r*, 486 F.3d 234, 247-248 (6th Cir. 2007). The court finds that the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence. The ALJ concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. 11, PageID #: 101.) The ALJ's decision, therefore, identified specific facts supported by the record that cast doubt on the severity of the conditions that Campbell described. (*Id*. at PageID #: 101-103.) Substantial evidence supports the ALJ's determination because "a reasonable mind might accept [the evidence] as adequate to support" his credibility determination. *Norris v. Comm'r*, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing *Rogers*, 486 F.3d at 241).

C.  Hypothetical Questions to VE

Campbell further contends that the ALJ's hypothetical questions to the vocational expert did not contain all of her limitations.  She argues that ALJ should have incorporated Dr. Wheeler's statement that she could only stand or walk for two hours out of an eight-hour workday.  (R. 13, PageID #: 697-698.)   The court's analysis is guided by the following principles.  A hypothetical question to the vocational expert must accurately portray the claimant's physical limitations.  *Pasco v. Comm'r*, No. 03-4358, 2005 WL 1506343, at *14 (6th Cir. June 23, 2005); *Varley v. Secretary, HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases). In addition, the ALJ may properly present a hypothetical to the VE on the basis of the ALJ's own assessment, if he finds the claimant's testimony to be inaccurate.  *Jones*, 336 F.3d at 476 (citing *Townsend v. Secretary, HHS*, 762 F.2d 40, 44 (6th Cir. 1985)).

The ALJ, in giving little weight to Dr. Wheeler's opinion, had addressed his assertion that claimant could only stand or walk for two hours out of a typical workday.  The ALJ stated that "such an opinion appears based primarily on the claimant's subjective allegations, compared to the signs of little observed deficit in gait or [leg] strength, and the lack of any shown significant findings concerning degenerative changes in the lumbar spine."  (R. 11, PageID #: 104.)  The medical evidence that the ALJ relied upon to make that determination was identified in the decision to support his conclusion.  *See, e.g.*, R. 11, PageID #: 102, 103.  For example, the ALJ noted that claimant testified it would take her an hour to walk a city block, or that she cannot lift or carry more than ten pounds, due to her alleged neck and lower back pain.  Yet, the record did not contain findings to support such allegations, such as degenerative changes in the lumbar spine, or findings of radiculopathy in her legs.  (*Id*. at PageID #: 102-04.)  Further, the ALJ indicated that, if the claimant suffered such pain as to markedly struggle to walk, she had

22

not shown any such signs at her physical exams, which have shown her to have a normal gait with no apparent need for a cane or other assistive device. (*Id.* at PageID#: 102.)

Nonetheless, the first hypothetical incorporated a sit and stand at will option. (R. 11, PageID #: 157.) The ALJ reasonably relied on the VE's testimony that a person fitting the profile described in the first hypothetical question could not perform Campbell's past relevant work, but that such person could perform a significant number of jobs as outlined in response to that hypothetical. (*Id.* at PageID # 158.) The hypothetical was consistent with the ALJ's RFC finding. (R. 15, PageID #: 733.)

The court finds that the ALJ's hypothetical question properly and accurately portrayed Campbell's individual physical limitations.

## IX.    RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's final decision be **AFFIRMED**.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date:  May 3, 2017

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).**